## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>United States Department of Justice<br>Environment and Natural Resources Division<br>10th & Pennsylvania Ave., N.W.<br>Washington, DC 20530;<br>**and**<br>**CALIFORNIA AIR RESOURCES BOARD**<br>1001 "I" Street<br>Sacramento, CA 95814<br><br>           **Plaintiffs,**<br><br>      **v.**<br><br>**HYUNDAI MOTOR COMPANY;**<br>**HYUNDAI MOTOR AMERICA;**<br>**KIA MOTORS CORPORATION;**<br>**KIA MOTORS AMERICA;**<br>**HYUNDAI AMERICA TECHNICAL**<br>**CENTER, INC.,**<br><br>         **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      **Case No.**  1:14-cv-1837 |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the California Air Resources Board ("CARB"), file this complaint and allege as follows:

## NATURE OF THE ACTION

1.      The United States brings this civil action pursuant to Sections 203, 204, and 205 of the Clean Air Act ("the Act"), 42 U.S.C. §§ 7522, 7523, and 7524, for assessment of civil penalties and injunctive relief against Hyundai Motor Company, Hyundai Motor America, Kia

Motors Corporation, Kia Motors America, and Hyundai America Technical Center, Inc. (collectively, "Defendants") for violations of the Act.

2.     The violations arise from Defendants' introduction into commerce in the United States of over one million motor vehicles ("Subject Vehicles") from model years 2012 and 2013 that were not covered by Certificates of Conformity as required by the Act and regulations promulgated thereunder.  The Subject Vehicles belong to six car lines:  Hyundai's Accent, Elantra, Veloster, and Santa Fe, and Kia's Soul and Rio.

3.     Defendants introduced into commerce the Subject Vehicles with a design specification material to emissions – namely, road load force – that did not conform to the specifications included in Defendants' applications for Certificates of Conformity intended to cover the Subject Vehicles.  A Certificate of Conformity covers only those vehicles that conform in all material respects to the design specifications stated in the application for that Certificate of Conformity.  Therefore, the Subject Vehicles are not covered by Defendants' Certificates of Conformity.  A vehicle's road load force is a critical factor in the testing and analysis the manufacturer conducts to derive fuel economy rates and to demonstrate that vehicles meet air pollution emission standards.  The nonconformity resulted from Defendants' improper testing, analysis, and reporting.  Because the Subject Vehicles in actuality had higher road load forces than reported, the Subject Vehicles had lower fuel economy and increased emissions of air pollutants than reported, particularly greenhouse gases.

4.     As to the same facts recited in paragraphs 2 and 3 above, CARB brings related claims against Defendants for violations of California Health and Safety Code Section 43212 for using non-accepted protocol to derive the road load force information as required by 40 C.F.R. § 86.129-00, which is incorporated by reference in applicable CARB test procedures (title 13

California Code of Regulations section 1961(d)).  Defendants sold over 126,000 Subject

Vehicles from model years 2012 and 2013 in the State of California.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction over the subject matter of, and the parties to, this

action pursuant to Sections 204(a) and 205(b) of the Act, 42 U.S.C. §§ 7523(a) and 7524(b), and

28 U.S.C. §§ 1331, 1345, and 1355.  This Court has supplemental jurisdiction over the California

law claims pursuant to 28 U.S.C. § 1367(a) because CARB's claims are related to the federal

claims and form part of the same case or controversy.

6.       Venue is proper in this jurisdiction pursuant to Section 205(b) of the Act,

42 U.S.C. § 7524(b), because the Administrator has her principal place of business here.

## DEFENDANTS

7.       Hyundai Motor Company ("Hyundai Motor") is a "person" within the meaning of

Section 302(e) of the Act, 42 U.S.C. § 7602(e), and a "manufacturer" within the meaning of

Section 216(1) of the Act, 42 U.S.C. § 7550(1).

8.       Hyundai Motor America ("Hyundai America") is a "person" within the meaning

of Section 302(e) of the Act, 42 U.S.C. § 7602(e), and a "manufacturer" within the meaning of

Section 216(1) of the Act, 42 U.S.C. § 7550(1).

9.       Kia Motors Corporation ("Kia Motors") is a "person" within the meaning of

Section 302(e) of the Act, 42 U.S.C. § 7602(3), and a "manufacturer" within the meaning of

Section 216(1) of the Act, 42 U.S.C. § 7550(1).

10.      Kia Motors America ("Kia America") is a "person" within the meaning of Section

302(e) of the Act, 42 U.S.C. § 7602(e), and a "manufacturer" within the meaning of Section

216(1) of the Act, 42 U.S.C. § 7550(1).

11.     Hyundai America Technical Center, Inc. ("HATCI"), is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e), and a "manufacturer" within the meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1).

12.     All Defendants are part of the Hyundai Motor Group, and the operations of the companies are interrelated, including sharing of testing facilities and personnel.

13.     At all times relevant to this action, Defendants were engaged in the business of manufacturing new motor vehicles and selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing these vehicles in the United States.

## STATUTORY AND REGULATORY BACKGROUND

14.     This action arises under Part A of Title II of the Clean Air Act, as amended, 42 U.S.C. §§ 7521-7554, and 40 C.F.R. Parts 86 and 600.  These provisions of the Act and the regulations promulgated thereunder aim to protect public and environmental health by reducing emissions of greenhouse gases and other air pollutants from light-duty vehicles.

15.     40 C.F.R. Part 86 sets emissions standards for light-duty vehicles.  Beginning with the 2012 model year, greenhouse gases are among the pollutants regulated under the Act. Light-duty vehicles introduced into commerce in the United States must not exceed emissions for greenhouse gases or other pollutants established by regulations promulgated pursuant to the Act.  40 C.F.R. § 86.1818-12 (setting exhaust emission standards for an aggregate group of six greenhouse gases).

16.     Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), prohibits manufacturers from selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing any new motor vehicle unless the vehicle is covered by a Certificate of

Conformity issued by EPA under the regulations promulgated pursuant to the Act governing vehicle emissions standards.

17.     EPA administers the certification program to ensure that every vehicle introduced into United States commerce satisfies applicable emissions standards.  42 U.S.C. § 7521.

18.     To obtain a Certificate of Conformity, a manufacturer must submit an application to EPA for each model year and for each test group that it intends to introduce into United States commerce.  42 U.S.C. § 7525(a)(1), 40 C.F.R. Part 86, Subparts A and S.

19.     A Certificate of Conformity covers a single test group of vehicles; the test group is comprised of vehicles with similar emissions profiles for pollutants regulated under the Act. Vehicles are covered by a Certificate of Conformity only if the vehicles are as described in the manufacturer's application for certification "in all material respects."  40 C.F.R. § 86.1848-10(c)(6).

20.     The manufacturer must describe a vehicle's road load force, among other design specifications, in the Certificate of Conformity application.  A vehicle's road load force is a measure of the internal and external forces that cause a vehicle to lose speed, such as driveline friction and wind resistance.  A vehicle's road load force determines, in part, a vehicle's fuel economy.  Fuel economy is positively and closely correlated with greenhouse gas emissions.  A vehicle's road load force is a material part of a Certificate of Conformity application.

21.     The road load force of a vehicle is described in terms of three road load coefficients, and can be calculated by performing a coastdown test on the vehicle.  A vehicle with a low road load force has relatively higher fuel economy and emits lower amounts of greenhouse gases because the vehicle efficiently maintains its momentum.  Conversely, a vehicle

with a higher road load force has lower fuel economy and emits more greenhouse gases because it needs to burn more fuel to counteract that road load force and maintain speed.

22.      Section 205(a) of the Act, 42 U.S.C. § 7524(a), provides that any violation of Section 203(a) of the Act, 42 U.S.C. § 7522(a), shall be subject to a penalty of up to $25,000 per vehicle.  Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, the maximum statutory penalty for violations occurring after January 12, 2009 is $37,500 for each vehicle.  40 C.F.R. § 19.4.

23.      Section 204 of the Act, 42 U.S.C. § 7523, provides authority for the district courts to "restrain violations" of Section 203(a).

24.      California Health and Safety Code Sections 43150 – 43156 require new motor vehicles and new motor vehicle engines to be certified by CARB before such new motor vehicles or new motor vehicle engines may be imported, delivered, purchased, acquired, received, offered for sale, sold, or registered in California.

25.      Title 13, California Code of Regulations (CCR) Section 1961(d) specifies California certification requirements and test procedures for determining compliance with emission standards ("test procedures").

26.      California test procedures in turn incorporate specified provisions of the U.S. Code of Federal Regulations, including Title 40, C.F.R. Section 86.129-00, which requires manufacturers to provide CARB with representative road load forces for each test vehicle from an engine family.

27.      California Health and Safety Code § 43212 states that "[a]ny manufacturer . . . who does not comply with emission standards or the test procedures adopted by the state board

shall be subject to a civil penalty of fifty dollars ($50) for each vehicle which does not comply with the standards and procedures and which is first sold in this state."

## GENERAL ALLEGATIONS

28.     Defendants Hyundai Motor, Hyundai America, and HATCI sold, offered for sale, or introduced into commerce, delivered for introduction into commerce, or imported into the United States, the Hyundai-branded new motor vehicles identified in Table 1 (Subject Vehicles) that do not conform in all material respects with the specifications stated in the applications for the Certificates of Conformity that purportedly cover them.

29.     Defendants Kia Motors, Kia America, and HATCI sold, offered for sale, introduced into commerce, delivered for introduction into commerce, or imported into the United States the Kia-branded new motor vehicles identified in Table 1 (Subject Vehicles) that do not conform in all material respects with the specifications stated in the applications for the Certificates of Conformity that purportedly cover them.

30.     The Subject Vehicles are identified by brand, model year, test group, and model in the attached Table 1.  In total, there are approximately 1,181,776 Subject Vehicles, including over 126,000 sold in California.

31.     Defendants worked together on testing of the Subject Vehicles for their applications for Certificates of Conformity, and individual applications included vehicles from multiple car models and more than one Defendant.

32.     Upon application by Defendants through HATCI, EPA issued Certificates of Conformity to Defendants for the Subject Vehicles.

33.     Audit testing by EPA's Office of Transportation and Air Quality ("OTAQ") in 2012 and subsequent investigation determined that the actual road load forces for the tested

vehicles were approximately 14-54% higher than provided for in the applications for Certificates of Conformity submitted by Defendants to EPA for the tested vehicles.

34.     Defendants' use of improper test procedures and analysis resulted in inaccurately low reported road load forces.  In particular, Defendants improperly selected results from test runs that were aided by a tailwind rather than correctly using the results of test runs in both directions, Defendants selected favorable results from test runs rather than average the results from the larger set of tests, Defendants restricted their testing times to periods when the temperature allowed vehicles to coast farther and faster, and Defendants specially prepared vehicle tires for optimized test results.

35.     The actual road load forces for the Subject Vehicles are higher than specified in the Defendants' applications for Certificates of Conformity.   Defendants' use and reporting of inaccurately low road load figures for the Subject Vehicles was contrary to good engineering judgment and practice.

36.     The materials that Defendants submitted to CARB in support of their applications to certify Subject Vehicles sold in California included road load force information as required by 40 C.F.R. § 86.129-00, incorporated by reference in the applicable CARB test procedures.

37.     Defendants did not use accepted protocol to obtain the road load force information required by 40 C.F.R. § 86.129-00, incorporated by reference in the applicable CARB test procedures.  Specifically, as detailed above, Defendants restricted their testing to a narrower temperature range, prepared vehicle tires for optimized results, selectively used data from tailwind-aided test runs, and elected to use certain test results rather than average the results from a large number of tests.

38.     Based on Defendants' use of incorrectly low road load forces, Defendants understated greenhouse gas emissions and overstated the fuel efficiency of the Subject Vehicles.

39.     On November 2, 2012, EPA announced that Defendants would lower their fuel economy estimates for the majority of their model year 2012 and 2013 models after an EPA investigation found discrepancies between agency testing results and data submitted by the companies.

40.     On November 2, 2012, Defendants lowered their fuel economy estimates for the majority of their model year 2012 and 2013 models.  For example, Defendants reported they overstated the fuel economy of certain configurations of the Hyundai Elantra by two miles per gallon ("MPG") for highway driving and lowered the rating from 40 MPG to 38 MPG. Defendants reported they overstated the fuel economy of certain configurations of the Kia Soul by six miles per gallon for highway driving and lowered the rating from 34 MPG to 28 MPG.

41.     Based on their underreported road load forces and overstated fuel economy, Defendants improperly claimed over four million greenhouse gas credits under EPA's averaging, banking, and trading program codified at 40 C.F.R. § 86.1865-12(k).

*[SEE TABLE 1 ON NEXT PAGE]*

**TABLE 1**
**Subject Vehicles**

| Brand | Model Year | Test Group | Model(s) |
|-------|-----------|-----------|----------|
| Hyundai | 2012 | CHYXV01.6RW5 | Accent |
| | | CHYXV01.8SW5 | Elantra |
| | | CHYXV01.8SPC | Elantra PZEV |
| | | CHYXV01.6AW5 | Veloster |
| | 2013 | DKMXV01.6DBE | Accent, Veloster |
| | | DKMXV02.0DCE | Elantra, Elantra Coupe, Elantra GT |
| | | DHYXV01.8BDP | Elantra PZEV, Elantra Coupe PZEV, Elantra GT PZEV |
| | | DHYXV02.01TE | Sante Fe Sport 2.0L Turbo |
| | | DHYXV02.41UE | Sante Fe Sport 2.4L |
| | | DHYXV01.61CE | Veloster Turbo |
| Kia | 2012 | CKMXV01.6BW5 | Rio |
| | | CKMXV01.6AW5 | Soul 1.6L, Soul Eco 1.6L |
| | | CKMXV02.0LW5 | Soul 2.0L |
| | 2013 | DKMXV01.6DBE | Rio, Rio Eco, Soul 1.6L |
| | | DKMXV02.0DCE | Soul 2.0L, Soul Eco 2.0L |

## FIRST CLAIM FOR RELIEF

### (Violations of Section 203(a) of the Clean Air Act: Introducing into Commerce New Vehicles Not Covered by a Certificate of Conformity)

42.     The United States realleges the preceding paragraphs as if fully set forth herein.

43.     Defendants sold, offered for sale, introduced into commerce, delivered for introduction into commerce, or imported the approximately 1,181,776 new Subject Vehicles identified in Table 1 that were not covered by Certificates of Conformity because the Subject Vehicles do not conform in all material respects to the vehicles described in applications for Defendants' model year 2012 and 2013 Certificates of Conformity.  Defendants misrepresented road load forces of the Subject Vehicles and incorrectly reported the fuel economy rates and emissions for these vehicles.

44.     Defendants violated Section 203(a) of the Clean Air Act, 42 U.S.C. § 7522(a), by selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing the new Subject Vehicles that were not covered by a Certificate of Conformity.

45.     Each sale, offering for sale, introduction, delivery, and importation by Defendants of the Subject Vehicles is a separate violation of Section 203(a), 42 U.S.C. § 7522(a)(1).

### SECOND CLAIM FOR RELIEF

**(Violations of California Health and Safety Code § 43212)**

46.     CARB realleges the preceding paragraphs as if fully set forth herein.

47.     Defendants submitted materials to CARB in support of their applications to certify a portion of the Subject Vehicles, and CARB issued Executive Orders certifying such vehicles based on the information contained in those materials.

48.     The materials that Defendants submitted to CARB in support of their applications to certify new 2012 and 2013 vehicle models included road load force information as required by 40 C.F.R. § 86.129-00, incorporated by reference in the applicable CARB test procedures.

49.     Defendants did not use accepted protocol to obtain the road load force information required by 40 C.F.R. § 86.129-00, incorporated by reference in the applicable

CARB test procedures.  Specifically, Defendants restricted their testing to a narrower temperature range, prepared vehicle tires for optimized results, selectively used data from tailwind-aided test runs, and elected to use certain test results rather than average the results from a large number of tests.

50.     Defendants committed violations of Health and Safety Code § 43212 by not using accepted protocol to derive the road load force information as required by 40 C.F.R. § 86.129-00, which is incorporated by reference in the applicable CARB test procedures.

## REQUEST FOR RELIEF

Plaintiffs respectfully request that the Court provide the following relief:

A.     Enter a judgment that Defendants are liable to the United States for civil penalties for violations of Section 203(a) of the Clean Air Act and assess civil penalties against Defendants for each Subject Vehicle;

B.     Enter a judgment that Defendants are liable to the California Air Resources Board for civil penalties for violations of Section 43212 of the California Health and Safety Code and assess civil penalties against Defendants for each Subject Vehicle sold in California;

C.     Enjoin Defendants from importing, distributing, or introducing into commerce any new motor vehicle not covered by a Certificate of Conformity issued by EPA in accordance with the Act and the regulations promulgated thereunder;

D.     Order Defendants to take appropriate steps to remedy the noncompliance, including improving the quality and control of testing data and procedures, forfeiting all greenhouse gas emission credits claimed by Defendants based on the under-reporting of the

greenhouse gas emissions of the Subject Vehicles, and any other mitigation and corrective measures deemed appropriate;

E.   Award Plaintiffs their costs in this action; and

F.   Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:


SAM HIRSCH
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division


JASON T. BARBEAU
Senior Attorney (D.C. Bar No. 468200)
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-8908 (telephone)
(202) 616-6584 (facsimile)
jason.barbeau@usdoj.gov

OF COUNSEL:
Evan Belser
Attorney Adviser
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC  20460

FOR CALIFORNIA AIR RESOURCES BOARD:


BARBARA C. SPIEGEL
Deputy Attorney General
California Office of the Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94109

Attorney for Plaintiff California Air Resources
Board