UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) ) | Civil Action No. 14-cv-1837 (TSC) |
| HYUNDAI MOTOR COMPANY *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## **MEMORANDUM OPINION**

Before the Court is the United States' unopposed motion to enter a consent decree. Having reviewed the Complaint, proposed Consent Decree and the motion, the Court finds that the agreement is fair, adequate, reasonable, appropriate, and serves the public interest. Therefore, the motion is granted and the Court will enter the consent decree.

### I.     BACKGROUND

This case arises from alleged violations of the Clean Air Act ("CAA") and related California Health and Safety Code violations by defendants Hyundai Motor Company, Hyundai Motor America, Kia Motors Corporation, Kia Motors America, and Hyundai America Technical Center, Inc. (collectively, "Defendants"). The United States, on behalf of the United States Environmental Protection Agency ("EPA") and in conjunction with the California Air Resources Board ("CARB"), seeks monetary penalties and injunctive relief against Defendants for allegedly falsifying fuel economy and greenhouse gas emissions claims for over one million Hyundai and Kia vehicles with model years 2012 and 2013 (the "Subject Vehicles").

The alleged violations occurred as a result of a discrepancy between the applications Defendants submitted for Certificates of Conformity and the actual specifications of the Subject Vehicles. Certificates of Conformity are required for new model vehicles pursuant to the CAA and include various specifications related to vehicle emissions. If a vehicle which is nominally covered by a given Certificate does not actually meet the specifications in that Certificate, the EPA deems that vehicle not covered by the Certificate at all, leaving it in violation of the CAA. In this case, Defendants submitted applications for Certificates which reported the Subject Vehicles' road load force. Road load force directly impacts the calculation of fuel economy rates and whether a vehicle meets air pollution emission standards. EPA determined that the road load force for the Subject Vehicles did not match the specifications in their Certificates due to Defendants' improper testing, analysis, and reporting. The Subject Vehicles had a higher road load force than Defendants' originally represented, meaning the vehicles had lower fuel economy and higher emissions compared to what Defendants stated in their applications. Because the actual road load force did not match the road load force in the Certificates, the Subject Vehicles were allegedly in violation of the CAA. *See* 42 U.S.C. §§ 7522-24.

CARB also seeks penalties for violations of California Health and Safety Code Section 43212 for the same improper testing and reporting as it related to CARB test procedures. Defendants sold more than 126,000 Subject Vehicles in the State of California. (Mot. 3).

## II.     LEGAL STANDARD

"Approval of a settlement is a judicial act that is committed to the informed discretion of the trial court." *United States v. District of Columbia,* 933 F. Supp. 42, 47 (D.D.C. 1996) (citation omitted). A court reviewing a consent decree must "determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid

consent by the concerned parties." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983) (citation omitted); *Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 70 (D.D.C. 2004); *see also Massachusetts v. Microsoft*, 373 F.3d 1199, 1206 n.1 (D.C. Cir. 2004) (noting the general requirement that a consent decree must "fairly and reasonably resolve the controversy in a manner consistent with the public interest") (internal quotations and citation omitted). Settlement is highly favored, as "[n]ot only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation." *Gorsuch*, 718 F.2d at 1126. This is particularly true in cases involving the EPA, where courts accord "broad deference . . . to EPA's expertise in determining an appropriate settlement and to the voluntary agreement of the parties in proposing the settlement." *District of Columbia*, 933 F. Supp. at 47.

The CAA requires EPA to provide "a reasonable opportunity by notice in the Federal Register to persons who are not named as parties or intervenors to the action" to submit comments on the decree before it is entered. 42 U.S.C. § 7413(g).

### III.   DISCUSSION

   a. <u>Fairness</u>

Courts must consider both procedural and substantive fairness in their analysis of proposed consent decrees. *District of Columbia*, 933 F. Supp. at 48. "A review of the fairness of a proposed consent decree requires an assessment of the good faith of the parties, the opinions of the counsel, and the possible risks involved in litigation if the settlement is not approved. A consent decree is substantively fair if it incorporates concepts of corrective justice and accountability[.]" *Envtl. Def.*, 329 F. Supp. 2d at 70 (internal quotations and citations omitted).

The consent decree proposed in this litigation is fair.  All the parties involved—the United States, CARB, and the Defendants—support entry of the decree. (Mot. 1).  There is no suggestion of impropriety in the negotiation of the agreement, and all the parties were represented and advised by competent technical and legal staff. (Mot. 7-8).  The parties have reached an agreement that remedies the alleged violations and holds Defendants accountable for emissions testing and reporting going forward.   In addition, the United States complied with the notice-and-comment procedures required by the CAA and received six comments, all of which received due consideration.

      b.  <u>Adequacy, Reasonableness, and Appropriateness</u>

When assessing whether the consent decree is adequate, reasonable, and appropriate, courts "focus on the extent to which the decree is confined to the dispute between the parties and whether the decree adequately accomplishes its purported goal." *Envtl. Def.,* 329 F. Supp. 2d at 71.  This does not mean a court may "impose its own judgments . . . [but] [r]ather, the court must determine whether the proposed consent decree is reasonable from an objective point of view." *Id.* (internal quotations and citation omitted).

The parties agree that the scope and purpose of the consent decree is to end this civil action and address "alleged Clean Air Act and related California Health and Safety Code violations based on Defendants' sale of more than one million vehicles that will emit more than four million metric tons of greenhouse gases in excess of what the automakers certified to EPA." (Mot. 1).  The penalties are threefold: (1) a $100 million fine ($93,656,600 to the United States and $6,343,400 to CARB); (2) forfeit of 4.75 million greenhouse gas credits from Defendants CAA Averaging, Banking, and Trading registries; and (3) injunctive relief which requires Defendants to reorganize their emissions certification group, revise test protocols, improve

management of test data and enhance employee training before they conduct emissions testing to certify model year 2017 vehicles, and audit model year 2015 and 2016 vehicles to ensure conformance with CAA requirements.[1]  (Mot. 3-4).

The fine is the largest in the history of the Clean Air Act, (Mot. 7), and is both adequate and appropriate given the underlying conduct of the Defendants and as a deterrent to future CAA violations.  In addition, the forfeiture of greenhouse gas credits corresponds to the amount of greenhouse gas emissions that were underreported as a result of Defendants' allegedly false reporting to EPA.  This is a reasonable punishment which addresses the underlying violation and puts Defendants in the position they would have been absent their allegedly unlawful conduct.  The forfeiture also ensures the integrity of the CAA emissions trading system by preventing improper credits from artificially inflating the market.  The injunctive relief is also reasonable and appropriate as it ensures that Defendants will take steps to prevent future violations and address any institutional problems that cannot be addressed by a monetary (or quasi-monetary) penalty alone.  In light of these factors, the Court finds that the consent decree adequately, reasonably, and appropriately addresses the conduct of the Defendants and promotes the purposes of the CAA.

   c.  <u>Public Interest</u>

The consent decree furthers the public interest by protecting the reliability of fuel economy and greenhouse gas emissions claims, which are increasingly important factors for consumers purchasing vehicles.  The decree also furthers the goals of the CAA by taking steps to ensure cleaner air for the public.  The public comments submitted in response to the EPA's Federal Register notice generally supported the proposed decree.

---

[1] In assessing the penalties imposed, the Court gave due consideration to the factors identified in 42 U.S.C. § 7524(b).

Five of the comments (three by state environmental departments and/or attorneys general and two by environmental NGOs) supported the agreement generally but requested that the settlement be renegotiated to include specific support for the promotion of electric vehicle programs, including a proposed $25 million in Supplemental Environmental Projects ("SEPs") to be given to certain states. SEPs are programs which may be included in CAA settlements and provide for specific projects to be undertaken as part of the settlement. 63 Fed. Reg. 24,796 (May 5, 1998). The United States considered the SEP proposals identified in the comments but determined that they "did not warrant withdrawing consent to the Consent Decree in order to reopen negotiations with the parties in an attempt to craft a different and more complex settlement arrangement that would include SEPs for electric vehicle programs in certain states . . . [t]he public interest would not be served by the United States' rejection of the Decree and the concomitant delay in compliance and expenditure of resources for renegotiation of the settlement or, alternatively, further litigation." (Mot. 9). The Court agrees. As stated above, the "general public benefit[s] from the saving of time and money that results from the voluntary settlement of litigation." *Gorsuch*, 718 F.2d at 1126. While an SEP to promote electric vehicles is a laudable goal, the parties in this case negotiated a fair and reasonable settlement which addresses the public interest in promoting the purposes of the CAA and protecting consumers and the public at large. It would not benefit the public to jeopardize this agreement and potentially mire the government and Defendants in lengthy litigation with unpredictable results, while simultaneously delaying the implementation of corrective measures.

IV.     CONCLUSION

For the foregoing reasons, the Court finds that the consent decree is fair, adequate, reasonable, appropriate, and in the public interest. The motion to enter the consent decree is therefore GRANTED. An appropriate Order accompanies this Memorandum Opinion.

Date:  January 9, 2015

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge